We'll call the next case, which is Pinker v. Redfern, case 5-15-0125. May it please the Court, Counsel, Assistant Appellant Defender Il-Hun Nam on behalf of Mark Redfern. There are three issues raised in the briefs, but the focus today will be on the third argument, regarding whether Mr. Redfern was deprived of a fair trial, where the State attempted to improperly shift the burden of proof to Mr. Redfern, by emphasizing to the jury that Mr. Redfern failed to memorialize his statement to Illinois State Police Agent Holly Finney in writing on three occasions during trial. So the first occasion was during Finney's direct examination, the second was during Mr. Redfern's cross-examination, and the third time was during the State's closing. So a brief review of the facts, Mr. Redfern was charged with two counts, count one was predatory criminal sexual assault, count two was aggravated criminal sexual abuse. After a jury trial, during deliberations, the jury addressed the Court twice. The first time, the jury asked the Court to view the complainant's trial forensic interview again, and the Court granted that request. The second time, the jury asked the Court for a recess due to conflicting decisions, but the Court denied that request, indicating that the jury had been out for about four hours, and it was too soon to send the jury home. After the jury was ordered to continue deliberating, the jury found Mr. Redfern guilty of count one, but not guilty of count two. So argument three involves the deprivation of his right to a fair trial, due to the State emphasizing to the jury, on three separate occasions, that Mr. Redfern failed to write out a statement, thus essentially attempting to push the burden onto Mr. Redfern. The problem here is that it's not just a single question during trial. It's not a fleeting comment during closing arguments. Instead, by emphasizing that Mr. Redfern's failure to get this matter cleared up in his own words, or insisting on a piece of paper so he could write it out in his own words, the State was effectively attempting to shift that burden, the burden that the State had in the first place, the burden to prove every element beyond a reasonable doubt. So the State's saying that Mr. Redfern had every chance to prove his story, to prove his innocence, and if only he had written it out. So the first time the State introduces this is during Finney's direct examination. Two months before the State charged Mr. Redfern, and Holly Finney is also the officer that interviewed the complainant, so that's part of argument two. But Finney was an experienced officer. She had been with Illinois State Police since 2004, so that's over 10 years. Finney testified that Mr. Redfern volunteered to talk to her. But it was Finney who organized everything, right? So she was the one that went to Altamont Police Department. She was the one that set up the time, the date. And she testified that she had been to the Altamont Police Department at least three times before. So she'd set up the place and the time, and the State argues at one point that this was not an interview by ambush, and of course it wasn't. It was set up, or it was planned, it was scheduled. So she had more than enough time to prepare. And she testifies that she intended to record a statement because she had an audio recording device. She also had a partner there, Sergeant Ryan Shoemaker. He doesn't testify at trial, but he was there with her. He had an audio recording device, but when hers broke down, she did not ask him for his or the Altamont Police Department's recording devices. And at the end of her direct examination testimony, she says, yeah, at the end of the interview, I asked him, because we didn't record this in any way, if he wanted to write this down. But he declined. He didn't do so. Next, the State parks on this lack of a written statement during Mr. Redfern's cross-examination. Was there any objection at trial? No, there wasn't, Your Honor. So this is going to be, this has to go through the plain error analysis. But the error here is clear. So you can see from Mr. Redfern's cross-examination that the State asked him numerous times, you know, Mr. Redfern, can you read, can you write, why didn't you give the statement? Why didn't you when you were given that chance? But Mr. Daly argues in his brief that the door was open. Would you address how the door being opened by the prosecutor went too far? Well, the State says the door was open because Mr. Redfern's counsel asked, sorry, Mr. Redfern's defense here was that, you know, what he said is different than what she said. She's twisting his words. But, of course, there's a credibility contest. That's always, you know, it's an adversarial processing process. Here, the whole kind of theme of the trial was the complainant's testimony versus Mr. Redfern's testimony. But also credibility questions concerning his testimony and what the officers testified to about admissions. That's right, Your Honor. But the fact here is that it's not just, the credibility is not a new issue. Credibility is always there at trial. Here, it's the fact that the State emphasizes this, argues it in closing argument, it devotes a section to it, and then tries, attempts to shift that burden onto Mr. Redfern. But even attempting to shift the burden of proof onto the defendant is not allowed. Here, further, the State asks Mr. Redfern at one point when he says, well, I wasn't given that option to write this down, and I wasn't in the, you know, mind game to ask for a piece of paper and pen. And the State says, well, that didn't happen either, huh? And then asks, you know, why didn't you write it out? So they kind of harp on this through his testimony. And this is different than, I think, the State cites to people via banks. And that's different there where in banks, the defense counsel elicited from an officer, at least on three or four occasions, by asking broad questions. You know, why didn't you do this? Why didn't you do that? And so the officer says, well, we didn't do this because he asked for counsel. He refused to talk to us and ask for counsel. So that comes out at least three or four times in the base case. Here, the State's asking the questions. And in the base case, it wasn't raised in closing arguments. Here, the State argues that during closing arguments saying, you know, Mr. Redfern was given that chance. If only he had given a written statement, this could have been salvaged. So Finney's failure to record her interview could have been salvaged if only he had written out a statement. But the point here is that Mr. Redfern is a lay person. Finney's an experienced officer. She had every opportunity to fix this mistake, but she did not do so. And then the State at trial says it was Mr. Redfern. He could have fixed it. He could have written out a statement. That's all he had to do, but he didn't do it. And as I said, even the attempt to shift the burden of proof, which the State holds at trial, is inappropriate. And here, the emphasis of the State's argument in closing, the State tried to shift the burden. Yes, and thus, if this Court does not have any other further questions, Finney has at this time. I'm going to have a chance to come back up one other time. Thank you. Good morning, Your Honor, and may it please the Court, Counsel. My name is Patrick Daly. I'm here on behalf of the State. Counsel has limited her argument to argument number three, and I'll do the same. Unless the Court has any questions on the other two arguments, I can answer any questions the Court may have. As Justice Moore correctly notes, there was no objection, so this doesn't go through the plain error doctrine. However, one of the essential tenets of the plain error doctrine is plain error analysis is inapplicable if no error actually occurs, and that's the State's position here. In this case, a special agent, Finney, testified that she had interviewed the defendant, would make a number of statements, a number of incriminating statements, including that the defendant had made physical contact with the victim, and that he had rubbed her buttocks in between her legs and back, had become sexually aroused, indicated it was a possibility that his finger may have actually touched the victim's vaginal area, and that he had harbored sexual thoughts about the victim. Officer Finney testified that she then offered the defendant the opportunity to write down a statement, to which the defendant declined that request. Now, there were some points made that the interview was not recorded. Finney testified that she had a tape recorder, but the tape recorder was broken. And that was an explanation why there was not some more moralization. The defendant testified that he agreed that he had rubbed the victim, but denied most of the other statements regarding whether he became sexually aroused, or had sexual thoughts about the victim, or that he made any contact with the victim's vaginal area, even incidentally or accidentally. What he did state then is that it wasn't just a matter of Officer Finney's testimony at trial being inconsistent, but that, in fact, during this interview itself, she accused the officer of twisting his words, putting words into his mouth, essentially restating things the defendant claimed that he was articulating, so that they appeared to be more incriminating. Therefore, the defendant had put out this set of facts which indicated that during the interview itself, the defendant was accusing his interviewer of essentially fabricating what he was trying to say, what had happened and what didn't happen. Given that, of course, and given the fact that the officer testified that he had been given the opportunity to put these things in writing, it might be that the defendant did deny that the officer had provided that opportunity. So there's also a discrepancy there, if you will. But the state's evidence was that the officer had given him the opportunity to write this information down, to memorialize what was said, and he had failed to do so. So here we have a defendant who takes a witness stand, and the defendant can certainly take a witness stand and testify to anything that he wishes to do. But a defendant who becomes a witness for himself also opens himself up to fair lines of cross-examination. Among those things that can be explored in a fair line of cross-examination is impeachment. Here, the prosecutor was impeaching the defendant about his claims, that during this interview, that he had actually engaged in this argumentation of whether or not he was providing or whether he was having his words twisted or words being put into his mouth. You would agree, Mr. Daly, that this was very aggressive impeachment at least, wouldn't you? Yes, I believe it was aggressive, at least on paper. When does it cross the line to shifting the burden of proof? Well, all right, I'll give you an example, perhaps. It's one thing to say, if you will, that, okay, Mr. Defendant, if all this is going on, why don't you put it down in writing here in an instance where you're offered to do so, in that particular factual context where you're claiming that words are being put into your mouth. A reasonable person may look at those circumstances and say, well, this could come back later. Did he agree that he had been offered the opportunity? No, he claimed he had not been offered that opportunity. So, again, I'm sort of construing this or constructing this argument logically to the prism of the prosecutor's evidence and what the officer had testified to, okay? Now, let's say a prosecutor had cross-examined along these lines. Okay, well, Mr. Defendant, didn't you have the opportunity, or why didn't you write it down when you had the chance to do so? Don't you know that in order for you to be proven innocent, you know, you're going to have to provide some information to this jury or a cross-examination along those lines? The defendant took the stand, but he could have reasonably produced evidence on his own which would have demonstrated or corroborated his burden of offense. That's not what the prosecutor argued here. The prosecutor argued here that under these circumstances in which you're being claimed to being told that what you're saying is not truthful, yet you didn't put that down right when you had the chance to do so, so it diminishes the credibility of the defendant's testimony in those lines, along the lines that the defendant here, if in fact it's true what he's saying, had certainly the chance to say what he says would happen because he's claiming that what the officer is saying is not what he was telling him. Well, at the time he was interviewed at the police station and they failed to report that interview, Correct. Did he agree that he was offered at any time any opportunity to, if you learn, did he say, let me put it another way, did he say you're twisting my words at that interview? He says that, yes, his testimony is that he told the officers during the interview that you're twisting my words. Okay. But he did say that he was never offered the opportunity to put it in writing, so that's, you know, I want to make sure that the court knows. I'm not saying that the defendant said, oh, I had that chance and I didn't do it. So he did testify that you're twisting my words and there was a back and forth in the testimony about what had actually transpired, so it increased both his credibility and the police officer's credibility in the issue. Right. And that's really, I think, what the focus here is that when the officer's credibility is being attacked by virtue of a set of facts in which the defendant has put himself on the window stand and claims I said this to Officer X, then that, in our opinion, in the state's opinion, opens a door in the line of examination which says, okay, that's true, why didn't you put it in writing when you had that chance right there to do so and you didn't do so. Now, the defendant was saying, in fact, did say, well, I didn't have that chance. But then again, the state's evidence is clearly the opposite of that. Okay. I mean, this prosecutor is not required to go up there and say, well, I accept what you're saying, Mr. Defendant, and that's that. That's obviously for the jury to make those relative credibility assessments, but it's not a matter of the state sort of pulling the whole cloth, this idea that the defendant had a free-stating obligation to produce extra evidence on top of what happened here in order to quantify or prove his innocence before the jury. So in this case, I think under this set of circumstances and the way that this examination occurred, it's our opinion that this was fair cross-examination. It was fair commentary on that cross-examination because if it was properly admitted cross-examination, the prosecutor can comment on that, and that it was not a Doyle-type situation or something along the lines where the state is commenting on the defendant's right to silence or that he has an obligation to present evidence of his innocence for the jury. Does the Court have any other questions on that issue or any of the other issues? Very good. Well, thank you, Your Honor, for your time. I appreciate it. Thank you. Your Honor, it's just two points. The first one is turning the people to be bunnying. It gives you, I think, two examples of when the state can impermissibly, you know, engage in such action that even if the state says, you know, if the state says something for impeachment, it's still improper. So here it was post-dress silence, of course. And then another — But counsel isn't, as counsel pointed out, a big difference between silence and when the defendant is contradicting what the officers are testifying to when he's actually testifying. That's correct, Your Honor, except here we're pointing out that even — So does bunnying actually apply? Well, bunnying shows you different scenarios where this might apply. Here, you're correct in that there is a big credibility issue. And, you know, the state, once again, doesn't argue the prejudicial aspect of the planned error analysis because of this big credibility issue. But bunnying does show, you know, post-dress silence. And if the state argues that the victim agreed to take a polygraph — some sort of polygraph exam, that can be two examples where it would be improper, even if an objection is made, even if it's sustained, the court cites to those two cases. And Banks also — oh, not Banks — says that it's true. Post-Miranda oral statements, the introduction of evidence that the defendant subsequently, after initially talking with law enforcement officers, refused to memorialize his or her statement is not necessarily in violation of the Constitution. But that's if the evidence in question was not adduced in order to establish the defendant's guilt. Here, the fact is the state is, you know, titoing on that line. Except in closing argument, the state closes the deal by saying he could have, he should have, but he didn't. He was given his opportunity to give his side of the story to prove his innocence, but he did not do so. So the state kind of solidifies that during closing argument. Are there any other questions? Okay. And Mr. Radford asks that this Court reverse and remand for a new trial. Okay. Thank you, counsel, for your arguments. The Court will take this matter under advisement. At this time, the Court will go into recess. We'll resume and then answer the next case.